FILED **Exhibit 2**
MARIE HIRST COURT CLERK
CANADIAN COUNTY, OKLAHOMA

NOV 2 7 2017

BY_____
DEPUTY

**IN THE DISTRICT COURT IN AND FOR CANADIAN COUNTY STATE OF OKLAHOMA**

| | |
|---|---|
| REINALDO LOZANO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: CJ-2017-699 |
| v. ) | |
| ) | |
| PAN-AMERICAN LIFE INSURANCE ) | |
| COMPANY and WEBTPA, INC., ) | CASE ASSIGNED TO: |
| ) | |
| Defendants. ) | JUDGE: PAUL HESSE |

## PETITION

COMES NOW the Plaintiff, Reinaldo Lozano, and for his causes of action against Defendant Pan-American Life Insurance Company and Defendant WEB-TPA, Inc., alleges and states as follows:

### I. JURISDICTION AND VENUE

1. Plaintiff Reinaldo Lozano ("Lozano") is a resident of El Reno, Canadian County, State of Oklahoma.

2. Defendant Pan-American Life Insurance Company ("PALIC") is a foreign insurance company domiciled in Louisiana and licensed to and engaged in the business of insurance in the State of Oklahoma, including Canadian County.

3. Defendant WEB-TPA, Inc. ("WEbTPA), is a foreign company domiciled in Texas and engaged in the business of healthcare benefits administration in the State of Oklahoma, including Canadian County.

4. The events which give rise to this lawsuit occurred in El Reno, Canadian County, Oklahoma.

5. The District Court in and for Canadian County has jurisdiction over the parties 12 O.S. §§ 137 and 187.

## FACTS

6. Plaintiff hereby adopts and alleges each of the facts and allegations set forth in paragraphs 1-5 above.

7. PALIC issued a group short term medical expense policy to Plaintiff, Policy No. PAL-STM-2008-REG[1], effective May 30, 2013 ("the Policy").

8. While the Policy was in force and Plaintiff was entitled to benefits, Plaintiff fell from a roof and suffered injuries that required medical treatment. Plaintiff's injuries ultimately required surgery to his neck, which was performed on September 26, 2013.

9. Upon information and belief, Plaintiff obtained life insurance coverage from PALIC.[2] In fact, Plaintiff never personally made any medical expense claims under the Policy and only became aware that his health care providers had made medical expense claims on his behalf after PALIC produced Plaintiff's claim file on March 7, 2016, pursuant to a subpoena issued in *Lozano v. Golden Rule*, Case No. 15-cv-01230-F, United States District Court for the Western District of Oklahoma.

10. WebTPA administers and processes claims for health benefits on behalf of PALIC. WebTPA is responsible for making all claims decisions, including whether benefits will be paid or denied on claims submitted under PALIC policies such as Plaintiff's. Most, if not all of the documents produced pursuant to the subpoena issued in *Lozano v. Golden Rule*, Case No. 15-cv-01230-F, United States District Court for the

---

[1] Plaintiff completed the application over the phone.
[2] Plaintiff is a native Spanish speaker with a minimal understanding of English.

2

Western District of Oklahoma, were from WebTPA, many of which do not indicate any identifying information for PALIC.

11. After review of the claim file, Plaintiff's counsel discovered that Dr. Robert Tibbs had submitted several claims throughout the spring of 2014 on Plaintiff's behalf for medical treatment and services provided in August through October of 2013 totaling $45,194.25. Upon further review of the claim file, Plaintiff's counsel discovered a May 8, 2014 Explanation of Benefits ("EOB") that was purportedly sent to Plaintiff[3] with ambiguously coded information at the bottom of the EOB that states such services and treatment were not covered due to a pre-existing condition specified in the certificate language. The claim file not only lacks explanation of what medical condition pre-existed the Policy, it lacks any indication of what investigation PALIC and/or WebTPA undertook in order to reach the conclusion that Dr. Tibbs provided medical treatment for conditions that pre-existed the issuance of the Policy.

12. The claim file further indicates that, in the middle of August 2014, Oklahoma Spine Hospital submitted claims for payment related to medical treatment and services provided to Plaintiff between September 26, 2013 and September 30, 2013 totaling $58,955.00. The claim file further shows that, in response to those claims, on August 19, 2014, either WebTPA or PALIC purportedly sent a Member Medical History Questionnaire to Plaintiff[4] and a Member History Questionnaire to Physician to Oklahoma Spine Hospital. The Questionnaires focus on the question of whether Oklahoma Spine Hospital had previously treated Plaintiff or had knowledge of whether

---

[3] Plaintiff has no recollection of receiving or ever seeing any Explanation of Benefits letters from PALIC.
[4] PALIC requested whether Plaintiff had been treated from May 29, 2008 to May 29, 2013. Plaintiff did not respond and has no recollection of ever seeing the letter.

3

Plaintiff had seen any other doctor or was hospitalized during the "pre-existing" period of May 29, 2008 to May 29, 2013. The claim file does not indicate what medical condition PALIC and/or WebTPA was investigating as to whether it was pre-existing.

13. The claim file also contains a copy of an EOB, also purportedly sent on August 19, 2014 to Oklahoma Spine Hospital for medical services from September 25, 2013 to September 30, 2013, explaining that an investigation was ongoing regarding a possible pre-existing condition and a Pre-Existing Condition form had been sent to the provider (Oklahoma Spine Hospital) and member (Plaintiff). The EOB does not indicate what medical condition PALIC and/or WebTPA was investigating as to whether it pre-existed the issuance of the Policy. However, the EOB does indicate that the Policy was terminated on September 29, 2013 and any medical treatment and services after the date of termination were not covered. There is no documentation in the claim file to indicate PALIC and/or WebTPA ever advised Plaintiff of the September 29, 2013 termination of his Policy. Moreover, Plaintiff has no memory of having ever received written notification from PALIC and/or WebTPA regarding the purported September 29, 2013 termination of the Policy.

14. The claim file indicates that, a week later, on August 26, 2014, Oklahoma Spine Hospital responded to the Member History Questionnaire to Physician, verifying that it had not previously treated Plaintiff. That same day, PALIC and/or WebTPA purportedly mailed another EOB to Plaintiff and Oklahoma Spine Hospital, explaining that it was investigating the issue of whether a pre-existing condition existed and that, until further information was received, it was denying the claim submitted by Oklahoma

4

Spine Hospital due to the "pre-existing condition" provision of the Policy[5]. Nothing in the claim file indicates what medical condition PALIC and/or WebTPA was investigating as possibly pre-existing the issuance of the Policy, nor what purported "pre-existing condition" merited the denial of the claim for benefits.

15. Two weeks later, on September 9, 2014, an EOB was purportedly sent to Plaintiff indicating a claim submitted by Oklahoma Spine Hospital was denied due to a pre-existing condition. Moreover, despite the denial, the EOB contains language that states if after review PALIC and/or WebTPA find that there is a pre-existing condition then the EOB would serve as a final denial. However, the EOB also states that if there is not a pre-existing condition then it would be reopened. Neither plaintiff nor his medical providers have ever been notified concerning the outcome of any review of the alleged "pre-existing condition" from PALIC's and/or WebTPA's investigation. The pre-existing condition supposedly supporting the denial is not indicated anywhere on the EOB.

16. The claim file contains no explanation regarding what medical condition pre-existed the date of the application for coverage nor any medical records regarding any supposed pre-existing condition. The claim file documentation also contains no explanation indicating why claims submitted by Dr. Robert Tibbs and Oklahoma Spine Hospital were unpaid other than the afore-mentioned EOBs. Instead, the claim file contains the Member History Questionnaire indicating Oklahoma Spine Hospital had never treated Plaintiff for any condition during the "pre-existing" time period. As a result

---

[5] Oklahoma statutes require that letters of denial of insurance benefits specifically set for the policy provision upon which a denial is based. 36 O.S. 1250.7(A). There were no specific Policy provisions cited in the EOB.

of PALIC's and/or WebTPA's actions, no benefits have been paid under the Policy for medical treatment and services that would otherwise be owed and payable.

## COUNT ONE – BREACH OF CONTRACT

17. Plaintiff hereby adopts and realleges each of the facts and allegations set forth in paragraphs 1-16 above.

18. PALIC breached its insurance policy with Plaintiff by refusing to pay medical expense claims and benefits covered and due under the Policy by creating a sham defense to payment based on an alleged, but unspecified "pre-existing condition".

19. PALIC has waived the right to claim any other basis for denial of Plaintiff's claims other than the supposed "pre-existing condition" upon which the EOB's to Plaintiff refer. PALIC is further estopped from alleging any other defense to non-payment under the Policy pursuant to the doctrine of "mend the hold".

20. As a direct result of Defendant's breach of contract, Plaintiff has suffered damages.

21. Plaintiff has been forced and compelled to hire an attorney to prosecute this action.

22. Plaintiff is entitled to recover his costs and attorney fees associated with this action.

23. As a direct and proximate result of Defendant's breach of the insurance contract, Plaintiff has suffered damages in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332, with interest, costs, a reasonable attorney fee, and such other relief as may be just and equitable.

## COUNT TWO – PALIC'S BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

24. Plaintiff hereby adopts and realleges each of the facts and allegations set forth in paragraphs 1-23 above.

25. As an insurance company licensed to do business in the State of Oklahoma, PALIC is bound by Oklahoma statutory and common law to honor its contractual obligations to its insureds in good faith. As such, PALIC has and continues to have a duty to deal fairly and in good faith with Plaintiff, its insured. Moreover, the duty to deal fairly and in good faith is non-delegable and an insurer cannot delegate its obligations to third-party administrators.

26. PALIC breached its duty to deal fairly and in good faith with Plaintiff because PALIC (or an agent and/or representative on its behalf) must conduct a full, fair and timely investigation and properly evaluate and promptly pay benefits to Plaintiff under the Policy. PALIC recklessly, intentionally and in bad faith chose not to fairly and properly investigate Plaintiff's claims and instead concocted a sham defense of a "pre-existing condition" in order to delay and effectually deny properly owed benefits to Plaintiff.

27. PALIC breached its duty to deal fairly and in good faith with Plaintiff because PALIC put its own interests ahead of Plaintiff by concocting a "pre-existing condition" defense to justify a refusal to pay properly owed benefits under the policy in an attempt to save PALIC money.

28. Upon information and belief, PALIC breached its duty to deal fairly and in good faith with Plaintiff because PALIC has a claims handling system or a standardized claims process where claims are denied as a matter of course as soon as claims are

7

submitted. The claims handling system or standardized claims process is intended to deny properly owed benefits by characterizing claims as "uncovered" without first conducting a proper investigation and having a reasonable basis to deny a claim as was the case with Plaintiff's submitted claims. PALIC then will only issue payment of benefits if the insured and/or medical providers dispute the denial and provide evidence to support payment that PALIC should have discovered with an appropriate and fair investigation under the circumstances.

29. PALIC breached its duty to deal fairly and in good faith with Plaintiff because it has intentionally designed a claims handling system where it does not supervise or take responsibility for claims-handling decisions of a third party administrator. PALIC has attempted to delegate its responsibility to Plaintiff to a *de facto* insurer, WebTPA; in doing so, PALIC has intentionally violated the contractual and good faith obligations owed to Plaintiff under the Policy.

30. PALIC breach its duty to deal fairly and in good faith with Plaintiff by setting up and implementing a claims handling system that denies claims upon receipt without a full and fair investigation.

31. As a result PALIC's breach of its duty to deal fairly and in good faith, Plaintiff suffered damages in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332, with interest, costs, a reasonable attorney fee, and such other relief as may be just and equitable.

32. PALIC's breach of the duty of good faith and fair dealing was intentional and malicious.

33. Punitive damages should be awarded against PALIC in an amount sufficient to punish PALIC and deter others.

## COUNT THREE – WEBTPA'S BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

34. Plaintiff hereby adopts and realleges each of the facts and allegations set forth in paragraphs 1-33 above.

35. WebTPA is a third party administrator that acts on behalf of PALIC to process claims for health benefits, investigate whether claims are payable, and has primary control over benefit determinations for PALIC's insureds. Thus, WebTPA has assumed all of the obligations and risks of an insurer with regard to claims submitted by PALIC's insureds.

36. Upon information and belief, WebTPA's compensation from PALIC is contingent on the number of claims approved, denied, or the amount of benefits paid under PALIC policies and/or WebTPA bears some of the financial risk of loss for claims.

37. WebTPA is sufficiently acting like a *de facto* insurer regarding claims submitted by PALIC's insureds such that there is a 'special relationship' between WebTPA and insureds; thus, giving rise to a duty of good faith and fair dealing owed to insureds.

38. WebTPA breached its duty to deal fairly and in good faith owed to Plaintiff by designing and implementing a claims processing system where PALIC's insureds' claims are denied as a matter of course as soon as claims are submitted and administered by WebTPA. The claims processing system is intended to deny properly owed benefits by characterizing claims as "uncovered" without first conducting a proper investigation and having a reasonable basis to deny a claim as was the case with

9

Plaintiff's submitted claims. WebTPA then would only approve payment of benefits to PALIC if the insured and/or medical providers dispute the denial and provide evidence to support payment that WebTPA should have discovered with an appropriate and fair investigation under the circumstances.

39. WebTPA breached its duty to deal fairly and in good faith owed to Plaintiff by recklessly and intentionally choosing not to fairly and properly investigate Plaintiff's claims and instead rely on a sham defense of a "pre-existing condition" in order to delay and effectually deny properly owed benefits to Plaintiff.

40. WebTPA breached its duty to deal fairly and in good faith with Plaintiff because WebTPA put its own interests ahead of Plaintiff by concocting a "pre-existing condition" defense to justify a refusal to pay properly owed benefits under the Policy issued by PALIC in order to maximize compensation and minimize financial loss of WebTPA.

41. As a result WebTPA's breach of its duty to deal fairly and in good faith, Plaintiff suffered damages in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332, with interest, costs, a reasonable attorney fee, and such other relief as may be just and equitable.

42. WebTPA's breach of the duty of good faith and fair dealing was intentional and malicious.

43. Punitive damages should be awarded against WebTPA in an amount sufficient to punish WebTPA and deter others.

WHEREFORE, Plaintiff Reinaldo Lozano prays for judgment against Defendant Pan-American Life Insurance Company and Defendant WEB-TPA, Inc. for an amount in

excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332, together with costs, interest, reasonable attorney fees, and other relief which this Court deems just and equitable.

                Respectfully submitted,

                */s/ Simone Fulmer*

                Simone Fulmer, OBA #17037
                Jacob L. Rowe, OBA #21797
                Harrison C. Lujan, OBA #30154
                Andrea R. Rust, OBA #30422
                FULMER SILL, PLLC
                P.O. Box 2448
                1101 N. Broadway Ave., Suite 102
                Oklahoma City, OK  73103
                Phone/Fax:     (405) 510-0077
                sfulmer@fulmersill.com
                jrowe@fulmersill.com
                hlujan@fulmersill.com
                arusst@fulmersill.com

                **ATTORNEYS FOR PLAINTIFF**

**ATTORNEYS' LIEN CLAIMED**
**JURY TRIAL DEMANDED**